[FOR PUBLICATION]
[Docket No. 21]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, | Civil No. 21-15638 (RMB/SAK) |
| Plaintiff, | |
| v. | **OPINION** |
| JOHN DOE, *infringer identified as using IP address 108.24.143.254*, | |
| Defendant. | |

**APPEARANCES**

John C. Atkin, Esq.
The Atkin Firm, LLC
55 Madison Ave., Suite 400
Morristown, NJ 07960

    *On behalf of Plaintiff*

Michael J. Fioretti, Esq.
The Law Offices of Michael J. Fioretti
1415 Route 70 (Marlton Pike) East, Suite 105
Cherry Hill, New Jersey 08034

    *On behalf of Defendant*

**BUMB, U.S. District Judge**

    Presently pending before the Court is another of this plaintiff's many lawsuits for copyright infringement of its pornographic films. Having entered into a settlement agreement and the defendant having admitted to the underlying

infringement, the parties now jointly petition the Court not only for an entry of final judgment in favor of the plaintiff, but also to allow the defendant to maintain a pseudonym identifier and for those parts of the record personally identifying him to remain under seal. Ripe for adjudication is the Consent Motion to Maintain Pseudonym Identifier in the Case Caption, Seal Documents, and For Entry of a Final Consent Judgment. [Docket No. 21.]

The parties' arguments for the defendant's continued anonymity—that he may otherwise lose future employment prospects and have his reputation irreparably tarnished—stem entirely from the fact that the infringed works were adult films. However, the Court is not persuaded that the sexually explicit nature of the infringed works is sufficient to make the requisite showing that the defendant has a reasonable fear of severe harm if the anonymity request were denied. If the defendant cannot meet his burden, the appliable law is clear that the public's presumptive right of access to judicial proceedings and records must prevail. Here, certain factors also weigh strongly against the defendant's anonymity, including the conclusory and unsubstantiated bases for which he seeks to remain anonymous, as well as the public's strong interest in knowing how this plaintiff—a plaintiff that continues to bring scores of copyright infringement lawsuits nationwide—is utilizing the federal courts. The anonymity inquiry presently before the Court is for the Court, *alone*, to decide. That the parties jointly moved to maintain the defendant's anonymity here has no impact on the Court's analysis nor the applicable legal standard for determining the appropriateness of the relief requested.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Strike 3 Holdings, LLC ("Plaintiff") produces and owns "award-winning, critically acclaimed adult motion pictures." [Docket No. 8 (hereafter, the "Amended Complaint") ¶ 2.] Plaintiff has experienced much success streaming its content on "subscription-based websites[,] proudly boast[ing] a paid subscriber base that is one of the highest of any adult content sites in the world[,]" and by licensing its films "to popular broadcasters," making Plaintiff's content "the number one selling adult DVDs in the Unites States," as well. [*Id.* ¶ 13.] Plaintiff maintains that as a leader in the pornography industry, it has "had positive global impact, leading more adult studios to invest in better content, higher pay for performers, and to treat each performer with respect and like an artist." [*Id.* ¶ 15.]

Plaintiff is no stranger to this Court, nor is it unfamiliar with filing federal lawsuits alleging claims of copyright infringement, which it has done extensively in this District and in District Courts across the United States in more recent years. For example, during roughly the last five (5) years and just in the District of New Jersey, Plaintiff has filed over eight hundred federal complaints styled just like the one underlying the current controversy—alleging infringement against a single John Doe defendant identified only by the Internet Protocol address ("IP address") used to infringe Plaintiff's copyrighted works online (the "Defendant").[1] [*Id.* ¶ 9.] Federal

---

[1] Six (6) days after it filed the Complaint [Docket No. 1], Plaintiff moved for leave to serve a third-party subpoena for initial discovery on the applicable internet service provider—prior to any Rule 26(f) conference but subject to a protective order allowing the John Doe defendant an opportunity to proceed anonymously and/or

3

courts in neighboring jurisdictions have also commented upon the frequency with which Plaintiff brings these copyright actions. *See Strike 3 Holdings, LLC v. Doe*, Civ. No. 21-5178 (GJP), 2022 WL 2276352, at *4 (E.D. Pa. June 22, 2022) (discussing a "recent article estimat[ing] that [Plaintiff] has filed three-fourths of the copyright infringement claims in the Eastern District of Pennsylvania this year"[2]).

      Plaintiff admits that it is particularly susceptible to Internet piracy like "other makers of motion picture and televisions works." [Amended Complaint ¶ 16.] Infringers of Plaintiff's copyrighted works commonly utilize what is known as the BitTorrent protocol, whose users can "simultaneously download and upload pieces of the file from and to other users," allowing them to distribute large files over the Internet more "quickly and efficiently" compared to just illegally "downloading a file . . . from a single source." [*Id.* ¶¶ 17–18.] The BitTorrent protocol also keeps its users confidential by "revealing only their IP address." [Docket No. 21-1 (hereafter, the "Consent Motion"), at 1.] Thus, to enforce its rights in its protected works, Plaintiff must "discover the name of the person assigned the IP address . . . and then

---

move to quash the subpoena—seeking to identify the subscriber/user of the IP address used to illegally download Plaintiff's content online [Docket No. 4]. Finding good cause to exist because Plaintiff had made "a *prima facie* claim for direct copyright infringement," but also noting the need to "protect the privacy rights of potentially innocent third parties," among other relevant findings, the Court granted leave for Plaintiff's third-party subpoena and allowed it to proceed with limited discovery within the parameters requested. [Docket No. 5.] Plaintiff's federal lawsuits for copyright infringement typically proceed this way, initially.

[2] Citing Aleeza Furman, *Adult Film Producer's Lawsuits Make Up Bulk of Philadelphia Federal Court's Copyright Infringement*, Legal Intelligencer (May 17, 2022, 6:10 PM), https://www.law.com/thelegalintelligencer/2022/05/17/adult-film-producers-lawsuits-make-up-bulk-of-philadelphia-federal-courts-copyright-infringement-filings/.

determine whether [it] can further identify that person (or someone else) as the infringer." [*Id.* at 1–2 (citations omitted).]

To combat the rampant infringement problem it faces, Plaintiff "developed, owns, and operates" technology called "VXN Scan," which can detect the IP address used by an infringer to illegally download its adult films via the BitTorrent protocol, as well as when the infringement occurred, among other technological capabilities. [Amended Complaint ¶¶ 27, 29–44.] Here, Plaintiff also utilized the geolocation services of third-party Maxmind, Inc. "to determine that this IP address was assigned to an address located (approximately) in Cherry Hill." [Consent Motion at 2.] Then, when the internet service provider for the IP address responded to Plaintiff's third-party subpoena, it identified the IP address subscriber "as Defendant's parent and provided a residential address in Cherry, Hill, New Jersey." [*Id.* at 3 (*citing* Docket No. 1–1).] Plaintiff continued to investigate and obtain additional information to determine who the infringer was, including:

> [. . .] evidence of third-party works that were downloaded and distributed via BitTorrent during the period of infringement using the same IP address, and publicly available social media of the subscriber as well as others that Plaintiff determined likely had access to the IP address. Based on that evidence, Plaintiff determined that Defendant (and not [Defendant's parent] the subscriber) is the infringer based on, among other things, matches between Defendant's publicly stated interests in social media concerning movies, television shows, and other media that were downloaded and distributed using the same IP address during the period of infringement. Accordingly, on December 10, 2022, Plaintiff filed its First Amended Complaint under temporary seal, with a redacted version on the public docket [a]nd dismissed its original claim against the placeholder doe party (*i.e.*, [Defendant's parent] the subscriber) without prejudice.

[*Id.* at 3–4.]

Defendant was served with process on December 13, 2021, and by February 28, 2022, the parties had entered into the Settlement Agreement, which "makes release of Plaintiff's claim contingent upon (1) Defendant's full admission of liability and (2) entry of a Consent Judgment providing Plaintiff with injunctive relief." [*Id.*] In fact, the parties do not dispute, and Defendant has admitted to the following:

- Plaintiff owns valid copyrights for each of the 35 works at issue, which were duly registered with the Copyright Office at the time suit was filed.

- [A]dditional evidence identifies Defendant as the infringer beyond his mere association with the IP address.

- Defendant downloaded and distributed Plaintiff's works through the BitTorrent protocol.

[*Id.* at 5 (citations omitted); *see also* Docket No. 21–2 ("Declaration of John Doe") ¶¶ 2–6.]

Notably, the relief sought by the parties in the Final Consent Judgment does not include an award of statutory damages or any monetary damages for Plaintiff, including attorneys' fees, costs, or pre- or post-judgment interest. [*Id.* at 8.] Instead, the remedy stipulated to by the parties as appropriate is limited to injunctive relief.[3]

---

[3] In the Consent Motion, the parties have stipulated that each of the below four (4) factors required for injunctive relief have been satisfied, as set forth by the Third Circuit in *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 236–37 (3d Cir. 2003):

> First, Defendant's admission of the well-pleaded allegations of the First Amended Complaint satisfies Plaintiff's burden to show a likelihood of success on the merits. Second, […] Plaintiff will suffer irreparable harm if an injunction is not granted, since nothing will prevent Defendants from continuing to infringe on Plaintiff's copyrighted works by distributing them to others using the BitTorrent protocol. Third, an injunction will not prejudice

However, the proposed Final Consent Judgment is much broader, and in addition to injunctive relief for Plaintiff, seeks to maintain Defendant's anonymity.

## II. JURISDICTION

This Court has original subject matter jurisdiction over the present action, pursuant to 28 U.S.C. § 1331, because it arises, in relevant part, under the laws of the United States, as well as pursuant to 28 U.S.C. § 1338 (federal jurisdiction over copyright actions, specifically).

Personal jurisdiction is also proper, pursuant to Fed. R. Civ. P. 4(k)(1)(A), because Defendant is domiciled and was personally with a copy of the Amended Complaint via a family member at his residence in New Jersey. [Docket Nos. 13, 14; *see also Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 (D.N.J. Aug. 13, 2015).] Further, since Defendant resides in this District, venue is proper pursuant to 28 U.S.C. § 1400(a) (venue for copyright actions, specifically); since Defendant resides in this District and a substantial part of the events giving rise to Plaintiff's claim occurred here, venue is also proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) (venue for federal actions, generally).

---

> Defendant[,] it will only prohibit him from continuing to infringe Plaintiff's copyrighted works and require him to destroy his unauthorized copies, and Defendant has consented to the entry of this injunctive relief. Finally, the prevention of copyright infringement serves the public interest.

[Consent Motion at 6–7 (citations and quotations omitted).]

7

### III. LEGAL STANDARD

#### A. Maintaining Pseudonym Identifier in Case Caption

Our judicial system has long appreciated that an "essential qualit[y] of a Court of Justice [is] that its proceedings should be public." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (citing *Daubney v. Cooper*, 109 Eng. Rep. 438, 441 (K.B. 1829); *Nixon v. Warner Cmmc'ns, Inc.*, 435 U.S. 589, 598–99 (1978)). Thus, federal courts permit a litigant to remain anonymous only "in exceptional cases." *Id.* (citations omitted) (explaining such result is sometimes allowed even though "not expressly permitted" by Fed. R. Civ. P. 10(a)).

In *Megless*, the Third Circuit was clear "[t]hat a [litigant] may suffer embarrassment or economic harm is not enough" to remain anonymous. *Id.* Instead, a litigant must show "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable." *Id.* (citing *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1043 (9th Cir. 2010)). The Court "should balance a [litigant's] interest and fear against the public's strong interest in an open litigation process." *Id.* (citations omitted). The *Megless* Court endorsed a nine (9) factor test used by District Courts considering whether to allow a litigant to proceed anonymously, pursuant to which the following six (6) factors generally weigh *in favor* of anonymity:

(1) [T]he extent to which the identity of the litigant has been kept confidential;

(2) [T]he bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases;

(3)     [T]he magnitude of the public interest in maintaining the confidentiality of the litigant's identity;

(4)     [W]hether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities;

(5)     [T]he undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and

(6)     [W]hether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Id.* (citing *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467–68 (E.D. Pa. Jan. 9, 1997). On the other hand, the remaining three (3) factors generally weigh *against* anonymity:

(7)     [T]he universal level of public interest in access to the identities of litigants;

(8)     [W]hether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and

(9)     [W]hether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* The Third Circuit also clarified that these factors are "not comprehensive," as the facts of a particular case may implicate other important considerations. *Id.* Rare and exceptional cases where litigants have been permitted to remain anonymous include "cases involving abortion, birth control, transexuality [*sic*], mental illness, welfare rights of illegitimate children, AIDS, and homosexuality." *Id.* at 408 (citing *Doe v. Borough of Morrisville*, 130 F.R.D. 612, 614 (E.D. Pa. Apr. 17, 1990)).

### B.  Permanently Sealing Parts of the Record

To justify the entry of an order sealing judicial records, the Court must "[1] articulate the compelling, countervailing interests to be protected, [2] make specific findings on the record concerning the effects of disclosure, and [3] provide an opportunity for interested third parties to be heard." *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 678 (3d Cir. 2019) (citations and quotations omitted).

## IV.  ANALYSIS

Unsurprisingly, this Court is not the first to consider the anonymity issue for a defendant implicated in one of Plaintiff's many copyright infringement suits. In many of these cases, consent orders are signed without judicial discussion. In other cases, federal courts discussing the anonymity issue have reached opposite conclusions in weighing the nine (9) *Megless* factors. *Compare Strike 3 Holdings, LLC v. Doe*, Civ. No. 21-3702 (KSM), 2022 WL 1214170, at *4 (E.D. Pa. Apr. 25, 2022) (granting the parties consent motion for the case caption "to identify [d]efendant by the John Doe pseudonym" and certain parts of the record to "remain under seal"), *with Strike 3 Holdings, LLC v. Doe*, Civ. No. 21-5178 (GJP), 2022 WL 2276352, at *4 (E.D. Pa. June 22, 2022) (denying a similar motion because the "[d]efendant's allegations of harm are vague and conclusory, not specific and serious").[4]

---

[4] The Consent Motion was filed with this Court on March 10, 2022, such that both of these opinions were decided while the current motion was pending. Disturbingly, Plaintiff's counsel—who represented it in both of these actions, as well as in the current controversy before this Court—submitted a letter notifying this Court of the supplemental (persuasive) legal authority regarding *only* the earlier decision from April 25, 2022, which granted a joint anonymity request. [Docket No. 22.]

The Court now turns to the multi-factor test endorsed by the Circuit in *Megless*.

### A. The *Megless* Factors Weigh Against Anonymity

This Court appreciates that whether an individual litigant may remain anonymous depends on the facts of a particular case. However, the facts in most of Plaintiff's copyright infringement suits are nearly identical for anonymity purposes, and instead, the divergent outcomes reached by reviewing courts appears to be based on such courts' consideration of the second *Megless* factor, specifically:

> (2) [T]he bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases.

*Megless*, 654 F.3d at 409. Some courts have concluded that this factor weighs in favor of anonymity for a defendant who illegally pirated Plaintiff's adult films simply because the "allegations touch on [d]efendant's sexuality." *See Strike 3 Holdings v. Doe*, 2022 WL 1214170, at *4. However, this Court agrees with the Honorable Gerald J. Pappert that "[e]ven in cases that touch on sexuality, there must be a reasonable fear of harm above and beyond mere embarrassment" to overcome the presumption of open litigation. *Strike 3 v. Doe*, 2022 WL 2276352, at *3.

Here, Defendant asserts the following specific injury if his anonymity request were denied:

> I *may* lose future employment opportunities based on the allegations of this case, resulting in financial losses. Further my reputations would be tarnished irreparably if I am publicly associated with the allegation in this case, *i.e.*, the copyright infringement of adult content.

[Declaration of John Doe ¶ 14 (emphasis added).] The Court finds that Defendant fails to substantiate these conclusory claims. Regarding prospective employment, Defendant has not provided any information about the nature of his employment or why he believes his employer, or a prospective employer in his industry, would take adverse action against him for illegally downloading Plaintiff's adult pornography. Relatedly, Defendant's claims about his reputation cannot be based entirely on the fact that he pirated adult films. Defendant asserts no facts to suggest that he is an otherwise vulnerable person in connection with the copyright infringement allegations brought against him, and to which he admitted.

The Court further agrees with Judge Pappert that "it is the rare civil lawsuit in which a defendant is not accused of behavior of which others may disapprove." *Strike 3 v. Doe*, 2022 WL 2276352, at *3 (citations omitted). Thus, it certainly cannot be the case that anonymity is warranted for every defendant sued by Plaintiff simply because Plaintiff's copyrighted works are adult films, legal in all respects other than how the defendants in these cases obtained and/or shared them via the BitTorrent protocol. This Court believes that it will also be the rare lawsuit in cases brought by Plaintiff where the defendant will be able to show a severe, extraordinary harm is reasonably feared in light of the defendant's individual circumstances—not just the pornographic nature of Plaintiff's protected works, which is a common fact in all of Plaintiff's copyright cases.

Further, "courts do not simply presume severe harm." [*Id.* (citing *Doe v. Cnty. of Lehigh*, Civ. No. 20-3089 (JFL), 2020 WL 7319544, at *4 (E.D. Pa. Dec. 11,

2020).] Instead, it is Defendant's burden to demonstrate that his is the exceptional case and that his unique factual circumstances provide a reasonable basis to fear some extraordinary harm. Merely stating that his reputation would be irreparably tarnished and future employment prospects *may* be lost—without any evidence or even a proffer to support either conclusory statement—does not meet the threshold for anonymity. Without more from Defendant to substantiate his claims, the Court finds that the second *Megless* factor weighs strongly against anonymity in its current analysis.

Like Defendant's request for anonymity, the issue at the heart of Plaintiff's underlying infringement claim involves a primarily fact-bound inquiry, as opposed to a purely legal analysis, as is relevant to the fourth *Megless* factor. After all, identifying Defendant as the individual who used the infringing IP address to pirate Plaintiff's works has been the main focus of this litigation. At no point in the litigation was there ever a dispute among the parties regarding the application of federal copyright law to the facts of this case. Thus, the Court also agrees with Judge Pappert's conclusion that "[a]llowing every defendant in [one of] Plaintiff's case[s] to remain anonymous undermines the public's ability to understand how its courts are being used." *Strike 3 v. Doe*, 2022 WL 2276352, at *4. The importance of the public's interest is especially significant here, given the extent to which Plaintiff is dominating the dockets of federal courts nationwide with its claims of copyright infringement. More specifically, the Court finds that the public has a strong interest in

understanding how Plaintiff is using the federal courts, including *against whom*. Thus, the Court finds that the fourth *Megless* factor also weighs against anonymity here:

> (4) [W]hether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities.

The final *Megless* factor weighing against anonymity, applicable in every case as "the thumb on the scale that is the universal interest in favor of open judicial proceedings," is the seventh factor:

> (7) [T]he universal level of public interest in access to the identities of litigants.

Of the remaining *Megless* factors, many are inapplicable to the current analysis, including the third, fifth, eighth, and ninth factors:

> (3) [T]he magnitude of the public interest in maintaining the confidentiality of the litigant's identity;
>
> (5) [T]he undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified;
>
> (8) [W]hether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and
>
> (9) [W]hether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

Regarding the third *Megless* factor, the Court finds that the public has little interest in maintaining Defendant's confidentiality and that forcing him to litigate under his own name as the only named *defendant* in this case would not deter "other similarly situated litigants . . . from litigating claims that the public would like to

14

have litigated." *Megless*, 654 F.3d at 410. Indeed, it seems apparent to the Court that Plaintiff will continue investigating and bringing these kinds of claims against other alleged copyright infringers as it has done extensively in the past. The fifth *Megless* factor is also inapplicable because the dispute has already been settled, and the eighth *Megless* factor is inapplicable because Defendant is not a public figure such that there is no unusually strong public interest in knowing Defendant's identity in connection with the subject of the litigation. [Declaration of John Doe ¶ 16.] Finally, no party, or third-party for that matter, actively opposes the continued use of a pseudonym by Defendant, so the final *Megless* factor is inapplicable, as well. This leaves only the first and sixth *Megless* factors:

> (1)  [T]he extent to which the identity of the litigant has been kept confidential; and
>
> (6)  [W]hether the party seeking to sue pseudonymously has illegitimate ulterior motives.

On balance, this Court is not persuaded that the effect of these two (2) remaining *Megless* factors weighs strongly enough to overcome the public's interest in open litigation, which the second, fourth, and seventh *Megless* factors weigh in favor of, as discussed above. While it is true that Defendant's identity has been kept confidential thus far in the litigation, such relief was only granted initially to "impose safeguards to protect the privacy rights of potentially innocent parties." [Docket No. 5, at 4 (citing *Strike 3 Holdings, LLC v. Doe*, Civ. No. 18-12585 (NLH/MJS), 2020 WL 3567282, at *11 (D.N.J. June 30, 2020)).] This allowed Defendant's parent—whose IP address was used by Defendant to infringe Plaintiff's works—to remain

anonymous as the initial party of interest until Plaintiff dismissed them from the litigation voluntarily. [Docket No. 12.] But that is no longer a concern, as Defendant has now admitted to the underlying copyright infringement. Accordingly, the first *Megless* factor is afforded little weight in the current analysis and the Court finds that the only *Megless* factor weighing in favor Defendant's anonymity here is the sixth. There is no evidence presently before the Court to suggest that Defendant has illegitimate or ulterior motives for seeking anonymity. However, the Court finds that this factor, alone, is not enough to tip the Court's *Megless* analysis in favor of continued anonymity for Defendant.

As discussed, the alleged consequences from disclosure—of lost future employment opportunities and irreparably reputational damage—are conclusory and speculative, at best. Therefore, the Court also finds that Defendant is unable to "articulate the compelling, countervailing interests to be protected" as required by the first factor to maintain the seal over the parts of the record that personally identify him. *See Avandia Mktg.*, 924 F.3d at 678. Accordingly, the parties' Consent Motion shall also be denied in that respect absent additional evidence from Defendant that he, in fact, has such a compelling and countervailing interest to protect by remaining anonymous.

      **B.**    **Plaintiff's Assent to the Anonymity Request Is Cause for Concern**

Although the sixth *Megless* factor pertains to whether Defendant has an ulterior motive for wishing to remain anonymous, since the parties jointly requested anonymity here, the Court also considers Plaintiff's motive for joining in the request.

Merely not having a reason to oppose Defendant's anonymity request may provide a simple and obvious explanation for Plaintiff's assent. However, given the sheer volume of copyright infringement litigation brought by this Plaintiff, the Court would be remiss if it did not elucidate its own, genuine concern that Plaintiff, driven by an improper motive to extract as many settlements as possible in its plethora of copyright infringement suits, is engaging in improper settlement and/or litigation tactics.

This Court is not the first to express such concern; the potential for Plaintiff's misuse of the judicial system to engage in coercive settlement practices is real. *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, Civ. No. 18-1945 (JBA), 2019 WL 1122984, at *3 (D. Conn. Mar. 12, 2019) (explaining that "[t]his [c]ourt is sensitive to the fact that the sheer volume of cases commenced by [Plaintiff], and their brief procedural history—commencement of the action, receipt of permission to serve a third-party subpoena on an ISP provider prior to the 26(f) conference, and voluntary dismissal of the actions weeks or months thereafter—is suggestive of coercive settlement practices that this [c]ourt does not condone"); *Strike 3 Holdings, LLC v. Doe*, Civ. No. 20-14321 (NLH/AMD), 2021 WL 7286225, at *5 (D.N.J. Dec. 22, 2021) (noting that "courts have raised issues with Plaintiff's settlement of these actions"); *Strike 3 Holdings, LLC v. Doe*, Civ. No. 18-16593 (MAS), 2019 WL 4745360, at *6 (D.N.J. Sept. 30, 2019) (allowing defendant to proceed anonymously after he lodged contentions that "[p]laintiff plans to use the threat of litigation coupled with the threat of reputational injury to coerce a settlement"); *Strike 3 Holdings, LLC v. Doe*, Civ. No. 18-822 (CB),

2018 WL 3688412, at *1 n.2 (W.D. Pa. Aug. 3, 2018) (noting the "[c]ourt shares the concerns of a number of district courts that the defendants might be subject to coercive settlement tactics absent limits").

While embarrassment, alone, is not a sufficient reason for a litigant to remain anonymous, the fear of embarrassment faced by the thousands of individuals implicated in Plaintiff's lawsuits for pirating pornography certainly is a significant factual element to these cases. Plaintiff should not be permitted to exploit this fear as a cudgel to enforce its rights in its copyright protected works. The reviewing court, *alone*, is the sole decision maker regarding whether the *Megless* factors, on balance, tip the scale strongly enough in favor of allowing a litigant to remain anonymous. It would be wholly improper for Plaintiff to extract a settlement by suggesting it has any influence over whether a defendant will be permitted to remain anonymous.

It is very concerning to this Court that Plaintiff would even suggest to its adversaries that its decision to join in a motion for anonymity (as occurred here), or to not oppose such a motion, would have any impact or consequence regarding how the Court might decide such motion. Anonymity for a litigant is a special judicial remedy that remains solely within the discretion of the Court and is an issue a litigant wishing to remain anonymous may raise with the Court when the circumstances warrant such relief. Plaintiff has no such arrow in its quiver to withhold anonymity from Defendant, but by that same token, has no relief to offer him, either.

A copyright plaintiff should not be permitted to leverage, in any way or against any individual defendant sued by it for infringement, whether such person will be publicly identified in connection with the lawsuit, no matter how blatant the underlying infringement might be. And while such a plaintiff certainly should be permitted to utilize the federal courts to enforce its legitimate legal rights in copyrighted works, federal courts should exercise great caution when such a plaintiff seeks to shroud the enforcement of such rights in secrecy. Here, there is no evidence presently before the Court that Plaintiff has, in fact, engaged in improper settlement tactics in resolving its claims against Defendant.[5] Still, the Court must be clear: any effort by Plaintiff to suggest it has influence over its copyright adversaries' anonymity, or non-anonymity, will be decisively and strongly condemned. In this case and on this record, Plaintiffs' assent to the Consent Motion is of no legal impact on the parties' joint request for Defendant to remain anonymous.

## V.    CONCLUSION

The pending Consent Motion [Docket No. 21] shall be denied, without prejudice. To the extent Defendant can supplement the record and provide additional evidence or argument in support of his anonymity request, he shall do so via written submission on the docket no later than thirty (30) days from the date hereof. It Defendant is unable to satisfy his burden to remain anonymous, the parties shall jointly submit to the Court for its final approval a revised Final Consent Order,

---

[5] Defendant is hereby instructed to *promptly* notify the Court of any evidence to the contrary.

reflecting the Court's reasoning set forth herein.[6] An accompanying Order of today's date shall issue.


Date: October 26, 2022                                    s/Renée Marie Bumb
                                                          Renée Marie Bumb
                                                          U.S. District Judge

---

[6] To the extent the parties negotiate a new settlement that does not require the Court's approval, Plaintiff always has the option of dismissing this case pursuant to Fed. R. Civ. P. 41(a)(1)(A), either with Defendant's consent or without it since he never served an answer or a motion for summary judgment in this case.